IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| TERRY RISHER #1014540 | § | |
| | § | CIVIL ACTION NO. 9:07cv66 |
| WARDEN PAUL SLOAN, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Terry Risher, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. 636(c). As Defendants, Risher named Assistant Warden Paul Sloan, Major Frank Helm, and Classification Chairman Stacy LeBlanc, all of whom were prison officials at the Gib Lewis Unit.

An evidentiary hearing was conducted on August 7, 2007, pursuant to <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985). At this hearing, Risher testified that on May 13, 2005, he was at the Gib Lewis Unit, housed on a pod with 84 inmates. A number of black and white inmates engaged in a racial riot, but Risher did not participate. As a result of the riot, G Wing was placed on lockdown, but other wings were not.

Three days later, Risher said, some inmates from another pod, members of the White Knights prison gang, came to the window of his cell and threatened him because he had not joined in the riot on the side of the whites. Risher sent an I-60 inmate request form, seeking protection, to the Unit Classification Committee, but received no response.

About two days later, Risher said, the lockdown was lifted, and he was assigned to general population, minimum custody, but he refused to go. A life endangerment investigation was begun and on May 25, 2005, Risher went before the Unit Classification Committee (UCC). This committee

1

consisted of the defendants Sloan, Helm, and LeBlanc. They asked Risher to identify the individuals who had threatened him, but Risher did not know their names. He says that the committee members "made comments and jokes" about how he must not be in danger if he doesn't know the names of the inmates who had threatened him. They concluded that since he could not identify those inmates, his claims were unfounded.

Risher insisted that he could not go back to population, and so he was told that if he did not, he would get a disciplinary case, lose all of his line classification, and go to close custody. He continued to refuse to go to population and tried to talk to Sgt. Knighton and Sgt. Martinez, but they did not want to listen to him. Major Helm was contacted, and he ordered that Risher receive a disciplinary case if he refused to return to population. Risher did refuse, and so his status was changed from transient, where he had been while the investigation was pending, to pre-hearing detention.

A second life endangerment investigation was begun, Risher says, but the committee again consisted of Sloan, Helm, and LeBlanc. They told him that if he continued to refuse housing, he would go to close custody or administrative segregation.

Finally, Risher says, on June 2, 2005, he agreed to move to general population. Three days later, on June 5, he was confronted by members of the White Knights gang. They took him to a cell which had been "rigged open" for that purpose and beat and kicked him for about ten minutes. He says that they then told him not to tell anyone or he would be killed. Risher was able to "stagger back" to his cell after the assault.

The next day, he says, a female officer saw that his eye was swollen and asked him what had happened, and he told her that he had been assaulted the day before. She called Sgt. Snipes who came and asked him if he had "fallen in the shower." Risher says that he lifted his shirt and asked Snipes if it looked like he had fallen in the shower. Snipes took pictures of his injuries, escorted him to the infirmary, and placed him back on transient status for the weekend.

Three days later, on June 8, Risher says that he again went before Sloan, Helm, and Leblanc. This time, they voted to recommend a unit transfer. Risher filed a grievance on June 16 about a lapse of security and being put at a risk of harm. On June 29, the disciplinary case which he had received for refusing housing was reversed because of "new evidence." Risher was transferred to another unit.

Risher states that the Step One grievance which he filed was returned with the response that he had not been mis-housed, but this was not the complaint which he made. He filed a Step Two appeal saying that if he had been transferred originally, the assault would not have happened, and the response was that he had been transferred and so the problem was resolved. Risher states that when his family contacted the unit, they were told that no assault had occurred; he expressed fear that the White Knights still had a hit out on him.

## The TDCJ Records

The Court has received and reviewed a copy of Risher's prison records. These records show that after Risher complained of threats against him, a life endangerment investigation was begun. Risher was interviewed by Sgt. Martinez on May 19, 2005. Risher told Martinez that on May 16, he was housed in G Wing, 221 cell, and was awakened by "loud yelling" outside of his window. He stated that a group of white inmates were passing outside of his cell window making verbal threats against him because he did not get involved in the riot three days earlier. Risher could not identify any of the inmates who were yelling outside of his cell.

Risher also told Martinez that his life was in danger from black inmates, who were upset that he had not been injured in the riot and because they thought that he had "snitched" on them. He said that on May 18, in the G Wing dayroom, a black inmate named Fowler, a confirmed member of the Crip prison gang, told other black inmates that Risher was "the white boy they needed to take care of." Risher could not identify any of the other black inmates to whom Fowler was speaking. Martinez concluded that Risher had not provided sufficient evidence to support his claim that his life was in danger and recommended that no further action be taken. However, a 72-hour extension in

the investigation was granted to allow Risher extra time to try to gather names of the inmates who had threatened him. A hearing was held, and the UCC concluded that no action was necessary because there was insufficient evidence to support the allegations.

On May 25, 2005, Risher wrote a letter addressed to the Internal Affairs Division. This letter repeated his claims and said that he was interviewed by Sgt. Thomas and Sgt. Martinez. When he went before the UCC, Major Helm did most of the talking. Risher stated that Helm told him that he had not provided enough information and that "the guys he hung out with" were known gang members. Risher says that he did not know that "those guys" were known gang members, and that he told Helm that the white inmates on the unit were "going to smash him." He added that if the guys he hung out with were known gang members, this just meant that his life was in more danger. He also added that LeBlanc called him a coward and commented that if he did not join in the fight, this just gave the other inmates a reason to be mad at him.

On June 5, 2005, after the assault, Risher wrote a witness statement. In this statement, he says that the day before, a white inmate approached him and said that he, Risher, needed to fight another inmate to "clean his name up because the word was he was a snitch." Risher replied that he did not really want to fight and that the only way he would was "if it would be strictly one on one and no hitting on the ground." The other inmate said "that was the way it was." Risher says that he went into the cell and two other inmates came in and attacked him, knocking him to the ground and kicking him several times. He says that the altercation lasted about two and a half minutes and that he did not know why they stopped, but he thinks that someone told them "the law was coming." Risher says that he got up and left the cell, but he could not find his attackers anywhere.[1]

Risher was interviewed that day and again the following day for a life endangerment investigation. The interviewer wrote that Risher was "uncooperative" during the first interview and did not provide any details about the incident. The next day, however, Risher was "more

---

[1] Risher's description of the fight in his written statement is considerably different from his description of the fight in his lawsuit and testimony.

forthcoming," and provided the names of his assailants, Shepard and Loper. These inmates were interviewed and Shepard admitted fighting with Risher, but said that Loper was not involved. The investigator noted that Shepard was due to discharge his sentence in a few months and may have been taking full responsibility so as to shield Loper from disciplinary action. Other inmates were interviewed and while these all denied any knowledge, some of them said that they had overheard other prisoners say that Shepard and Loper were the ones who had assaulted Risher.

Another UCC hearing was held on June 8, 2005. As a result of this hearing, the committee recommended a unit transfer. Risher was subsequently transferred to another unit.

Legal Standards and Analysis

Risher's complaint is that the members of the Unit Classification Committee, Helm, Sloan, and LeBlanc, were deliberately indifferent to his safety. The Supreme Court has specifically addressed the issue of deliberate indifference to an inmate's safety in prison. The Court explained that

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
>
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); *see* Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

In keeping with Farmer, the Fifth Circuit has held that prison officials have a duty to protect inmates from violence at the hands of other prisoners; however, not every injury suffered by a prisoner at the hands of another rises to the level of a constitutional violation. Horton v. Cockrell, 70 F.3d 397, 400 (5th Cir. 1995). The plaintiff prisoner must prove both that he is incarcerated under conditions "posing a substantial risk of serious harm" and that the prison official's state of

mind is one of "deliberate indifference" to the inmate's health or safety. Horton, 70 F.3d at 401, *citing* Farmer, 114 S.Ct. at 1977.

In Davidson v. Cannon, 474 U.S. 344 (1986), the Supreme Court faced the issue of what constitutes deliberate indifference to an inmate's safety. There, an inmate named Davidson was threatened by another inmate, McMillian. Davidson sent a note to the Assistant Superintendent of the prison, Cannon. Cannon passed the note to a guard named James. James, however, left the note on his desk and later forgot about it. McMillian later assaulted Davidson, causing serious injuries.

The Supreme Court acknowledged that the Defendants' lack of due care resulted in serious injury, but held that the lack of due care alone did not approach the sort of abusive governmental conduct that the Due Process Clause was designed to prevent. The Court emphasized that negligence alone was insufficient to trigger the protections of the Fourteenth Amendment. Davidson, 474 U.S. at 347-48.

In this case, Risher complained that he was in danger, and an investigation was begun. He told the interviewer that some unknown white inmates were yelling outside of his window, and that a black inmate was talking to others in the dayroom about how they needed to "take care of" Risher, apparently because he had not been injured in a riot in which he had not participated. Interviews were conducted and a hearing was held, and the committee determined that there was not enough evidence upon which to conclude that Risher's life was in danger.

Risher has not shown that the Defendants were deliberately indifferent to his safety, as that term is defined by the Supreme Court. Even if they were negligent or acted with a lack of due care, or were mistaken in their perception of the threat, this is not sufficient to show a constitutional violation. Davidson, 474 U.S. at 348. As Farmer explained, the failure to alleviate a risk which should have been perceived but was not does not constitute deliberate indifference to safety. Farmer, 114 S.Ct. at 1979.

The Fifth Circuit has noted that deliberate indifference is "an extremely high standard to meet." Domino v. TDCJ-ID, 239 F.3d 752, 756 (5th Cir. 2001). The fact that Risher suffered

injuries as a result of being assaulted by two other inmates is not by itself enough to show that he is entitled to relief absent a showing that these injuries were the result of deliberate indifference to his safety. Davidson, 474 U.S. at 347; Bowie v. Procunier, 808 F.2d 1142, 1143 (5th Cir. 1987). Nor do LeBlanc's comments at the hearing that Risher was "a coward," or the fact that the committee members remarked on his inability to name the persons who had threatened him, show that the Defendants acted with deliberate indifference to his safety. As the Supreme Court explained, not every injury by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety. Farmer, 114 S.Ct. at 1977. Because Risher has failed to show that the Defendants were deliberately indifferent to his safety, his claims against them must be dismissed.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Risher's claim lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, his lawsuit may be dismissed as frivolous under 28

7

U.S.C. §1915A(b).  *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993).  It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous.  28 U.S.C. §1915A(b).  It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **27** day of **September, 2007.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE